First case for the afternoon is People v. Daniel Pace, 5-170343. And if you are ready, it looks like you are, we can begin. May it please the Court, Counsel, Assistant Appellate Defender Vinh Xuan Nam on behalf of Daniel Pace. There are three arguments on appeal. The focus today will be on the first and third arguments, and we'll rely on the briefs for the second. The first question before this Court is whether the trial court properly reviewed Mr. Pace's request for pre-sentencing credit for the time he spent inpatient at Chestnut Health Systems. Just to recap, Mr. Pace, an admitted drug addict, was charged with one count of unlawful possession of less than 5 grams of methamphetamine and with one count of unlawful possession of drug paraphernalia. On May 3, 2016, he was taken to a secure inpatient substance abuse treatment facility, which was Chestnut Health. He was ordered to be transported directly from the Clay County Jail to Chestnut and to enter the facility promptly. During the time he spent in Chestnut's custody in the inpatient secure treatment center, he was required to, one, not consume alcohol or any illicit drugs, be subject to random drug and alcohol testing at the discretion of both Chestnut and the Clay County Probation Department. He was required to sign all documentation to allow the Probation Department access to updates and progress reports from Chestnut and to abide by all of Chestnut's terms and conditions for his secure inpatient treatment. On June 1, 2016, after successfully completing his inpatient treatment, he was immediately returned to the county jail. Approximately a month after returning to the county jail, he was placed in the Effingham County Drug Court Program, and later the state filed a petition to revoke his drug court status. However, at issue for the first argument, we're dealing with Mr. Pace in Chestnut's custody, so approximately the 28 days. There are two main problems with the trial court's failure to grant Mr. Pace pre-sentence credit for his time in Chestnut. First, as we argued, the court failed to exercise its discretion when it ruled that it would, quote, not grant as a matter of discretion any time for time spent in drug court, end quote. The trial court, as the parties discussed, was well aware of Mr. Pace's involvement in drug court. The whole revocation hearing was dealing with that and his drug court status. And as the state points out, defense counsel repeatedly told the court about this time, the 28 days in Chestnut. But the trial court still chose to say drug court, not inpatient treatment, not Chestnut, not substance abuse treatment. It didn't mention the 28 days. In fact, it makes sense, if the court meant drug court, that Mr. Pace would not get credit for that. I mean, his freedom was less restricted, his drug court status was terminated prematurely, his status was revoked through the state's petition, so of course he would not be getting credit for drug court. The state argues that this is just a misnomer, that the court misspoke. But the trial court was aware of both, you know, Mr. Pace's attorney's arguments for Chestnut and that he was participating in the incoming drug court. So that specificity in denying credit kind of cuts against that claim that the trial court actually exercised its discretion where it says drug court and not Chestnut or inpatient treatment. However, alternatively, if this court disagrees with Mr. Pace, the trial court still failed to exercise or failed to exercise discretion or, sorry, if this court disagrees with Mr. Pace that the trial court failed to exercise discretion, it's still an abuse of discretion to not grant him credit for his 28 days in secure inpatient treatment. Counsel? Yes, Your Honor. This issue is almost moot now, isn't it? Your Honor, he's still on parole and he can always violate, which means he will be reincarcerated. So this isn't moot. It's still valid and it can kind of reappear, kind of be an issue at any time again. So he's on parole now, is it? That's correct, Your Honor. That is the last time I checked the inmate locator. So as to an abuse of discretion, his time at Chestnut, which was, as I said, a secure inpatient treatment facility, was custodial. And the parties agreed Mr. Pace's freedom was restricted. He was under Chestnut's supervision for 24 hours, under Chestnut's authority completely as the order stated. And his situation is distinguishable from those individuals who are on bond or bail. He wouldn't have a hearing to alter his terms or fight any issues that he had with Chestnut or the probation department. And, for example, if he fled on his way to Chestnut or from his way to Chestnut or if he fled the facility at any time, he would reasonably be charged with escape here, just like in People v. Simmons. In Simmons, the defendant was transferred from IDOC to a correctional center, a community correctional center. There he was allowed six hours a day to go to a shopping center, to a mall. And a correctional officer drove him there, but he was pre-approved for his brother to drive him back. So this was him going from the correctional center to the mall and coming back. And he fled. Between that time he was at the mall, he fled. And he was charged with escape and convicted of it. Let me ask you a question. Yes, Your Honor. There was extensive argument, I assume, before the trial court on this very issue. And I assume that these factors that you're bringing up were presented to the trial court. The trial court just did not make any specific findings. Can we assume by its denial, if we assume that when it said the drug court had included Chestnut, by the trial court denying any credit for this type of treatment, that the trial court really did consider it? I mean, it had before all the information that it needed to do that. Well, right. So that goes to that first part where, you know, whether it exercised discretion or not. We're arguing that because the court specifically said drug court, even after extensive argument, even after knowing all of these facts, that that specificity cuts against the court actually exercising discretion. But, once again, if this court disagrees, then we're arguing that it's still an abuse of discretion because this is an inpatient, secure facility. He was not allowed to leave. It's 24 hours. There's no disagreement. The State, I think, in its brief says that, you know, Mr. Paisa's freedom was restricted. Counsel, go ahead and finish and I've got a question for you. I'm sorry. Well, so my point would have been if he – the order stated that at any time, for any reason, if he was no longer accepted at Chestnut, if he was – I think there was a question that he might have been rejected at the door of Chestnut. If for any reason he was rejected or no longer allowed in Chestnut, he was immediately to return. And that's where the – you know, he was reasonably – reasonably would be charged with escape if he had fled or left or without authorization left. He wouldn't have been able to fight that because it's clear that at any time, for any reason, even if he, you know, was unsuccessfully discharged or successfully discharged, which he was here, he was immediately to return to the jail. There was no – there was no option for him to, you know, argue terms. The probation department was to come out to do random drug tests. The facility could even do random drug tests. And if for any reason probation didn't like what it was seeing, because it was getting progress reports and updates because that was what happened, he signed off all those forms so that the probation department could be updated at a regular time or whenever they wanted. If at any time that they didn't like it, he would have had to return. So it's not – it's not one of these, you know, bail bond-like places. He was under the custody of Chestnut and the probation department. Do you still have your – Go ahead. Continue on. Okay. So further, as I stated, in Simmons, it didn't matter whether it was the correctional officer or Simmons' own brother who transported him. I think the state mentioned that, you know, it kind of cuts against the fact that he was in custody where Mr. Pace's own attorney drove him to the facility. But even a defendant's own brother can do it as long as it's pre-approved. And here the attorney was pre-approved to transport Mr. Pace, and he's an officer of the court. So that doesn't cut against the fact that Chestnut was custodial. Here the argument is that Chestnut's – or his time in Chestnut, the 28 days, was custodial, that the trial court abused his discretion where, you know, Mr. Pace, as discussed in the briefs, he is an addict. He admitted it. He needed this treatment. He got the treatment. He successfully was terminated. He didn't have any issues at Chestnut. When Chestnut believed he was ready, he was released. And he immediately went back to the jail. So the argument here is that it was custodial, and the trial court abused his discretion. I'll come back and reply. Thank you, Your Honors. Thank you. Ms. Berg, is this your 7-11 student, I understand? Yes, Your Honor. First time arguing? Yes, Your Honor. All right. Well, we'll be in full attention. So, again, whenever you're ready. May it please the Court. Counsel. My name is Keira Berg, and I'm a 7-11 from the University of Illinois on behalf of the Appellate Prosecutor's Office in this matter. The State asked this Court to affirm the trial court on the three issues that defendant presents. On the first issue, the State asked this Court to hold that the trial court did not abuse its discretion by denying the defendant's request for pre-sentencing credit for the time he spent at Chestnut. The governing statute here clearly gives the trial court discretion whether or not to grant pre-sentencing credit for substance abuse treatment. Now, defendant first argues that the trial court abused its discretion by failing to exercise that discretion at all. And defendant bases this argument off the fact that the trial court used the term drug court rather than drug treatment in his statement of denying the defendant's request. The record of the sentencing hearing as a whole clearly indicates that the trial court simply misspoke when he said drug court instead of drug treatment or Chestnut or some other such phrase. And the record clearly shows that because at the sentencing hearing, the defendant only requested pre-sentencing credit for two periods of time. The first was four days that he spent in custody in Texas waiting to be transported back to the jurisdiction. And the second request was for these days that he spent in treatment at Chestnut. And the trial court granted the first request and denied the other. It's unreasonable to infer from the trial court's use of the term drug court rather than drug treatment that the trial court completely ignored one of these only two pre-sentencing credit requests defendant had made and also then infer that the trial court had decided to rule on a request that defendant had not even made at the sentencing hearing. And furthermore, it was not an abuse of discretion for the judge to deny the defendant's request for credit for the time he spent at Chestnut. First, it was not abuse of discretion because this treatment was not custodial, which is required to be under the statute in order for the judge to even consider granting the credit. Custody for purposes of pre-sentencing credit has been defined by the Supreme Court as the legal duty to submit to the unilateral authority of the executive branch, not as being subject to some certain degree of physical confinement. For that reason, a defendant released on bond is never in custody for purposes of pre-sentencing credit because the conditions of bond had been set by the court and not by the executive branch. And for that reason, the defendant's treatment at Chestnut was not custodial because his conditions of release had been set by the court, not by the executive branch. The defendant was being held on a $50,000 bond in the jail which he had been unable to meet. The court then entered an agreed order modifying the conditions of his bond to allow him to attend treatment. And therefore, it's clear here under the definition of custody that because those conditions had been set by the court, no matter how restrictive or loose those conditions were, he was not in custody for purposes of pre-sentencing credit. And finally, Your Honors, even if the treatment was custodial,  it uses the term may, states that the trial court may give credit to the defendant if the court finds that the confinement was custodial. And generally, this term may is interpreted as permissive language indicating that the decision was still within the discretion of the trial court. And here, it would not have been an abusive discretion for the court to deny credit, which was part of the defendant's qualification for drug court where a defendant subsequently failed to complete that drug court program and fled the jurisdiction. And so for those reasons, Your Honors, the state asks that you hold that the trial court did not abuse its discretion by denying that request for pre-sentencing credit. Question. If indeed, and as the statute indicates, it's a discretionary thing that the court may do, does the court require to, in support of it, exercise the discretion to make statements on the record as to its basis for doing that? It's not, Your Honor, because under the statute, the court is only required to make a finding that the confinement was custodial in order to grant credit. And so this court shouldn't read an additional condition into that statute requiring it to find otherwise before denying the credit, since that's not required. Do you think in fairness it should be that? I mean, a reasonable interpretation, if it can do that, if the finding is custodial in reverse is also true. I think, you know, it would be reasonable, but it's certainly just the same reason as the statute, not a condition that's in there under a plain reading. Moving to the third issue, the state asks this court to hold that the defendant is not entitled to revoke his admission to the petition to revoke his drug court status for two reasons. First, because the trial court substantially complied with the admonishment required by Rule 402a)(a)(6), and second, alternatively, even if this court finds that there was not substantial compliance, defendant is not entitled to revoke his admission because the omitted admonishment did not prejudice the defendant or deny him real justice. It's clear here that the court in admonishing defendant at the hearing on the petition to revoke his drug court status did not strictly comply with Rule 402a)(a)(6), which requires admonishment as to the sentencing range for the underlying offense. However, Rule 402a does not require strict compliance. It only requires substantial compliance. And there's substantial compliance with the rule when the record as a whole indicates that the defendant understood the information that would have been contained in the admonishment that was supposed to have been given. Now, the main factor for deciding whether there's substantial compliance is how recently the defendant was given the full and correct admonishment required by Rule 402a. However, that factor is not determined here because we're in between precedents coming out either way. The defendant was most recently admonished of the sentencing range for his offense about seven months prior to this hearing. And we've got one precedent saying that one month is definitely close enough to find substantial compliance just on this factor and that 20 months is definitely too far. So for that reason, Your Honors, the state would suggest that because this is supposed to be an inquiry into the record as a whole and to consider each case on its own unique facts, the indeterminacy of that factor suggests we should look to some other factors in the record. And those factors reveal that the defendant did understand the sentencing range for his offense by the time he appeared at this hearing on the petition to revoke. The first factor, which other courts have considered here, is whether he was not just previously admonished of this but whether he was repeatedly previously admonished of this, which the defendant was. He was admonished on two prior occasions that his sentencing range for this offense was two to ten years. Also, courts have looked at whether other information in the colloquy at the PTR hearing would have helped the defendant understand the information that was supposed to have been contained in the admonishment. And here, at the PTR hearing, the court did admonish the defendant his underlying offense was a Class III felony. Now that, standing by itself, wouldn't have informed the defendant of the sentencing range. However, on these two prior occasions, the defendant had been admonished that his offense was a Class III felony carrying a sentence of two to ten years. And finally, Your Honors, since each case should be considered on its own unique facts, we can look here at the defendant's substantial criminal history. By my count, he's got 17 previous felony convictions, three specifically Class III felonies, which he has served time for. And all of these factors taken together, the repeated prior and correct admonishments as to his sentencing range, the admonishment of the colloquy, or during the colloquy that his offense was a Class III felony, and his prior criminal history, indicate that realistically the defendant understood the sentencing range for his underlying offense at this hearing on the PTR. But finally, Your Honors, even if you find that there was no substantial compliance with Rule 402A, defendant is not entitled to a remedy because in order for an improper admonishment to be a reversible error, the defendant must prove that the error prejudiced him or denied him real justice. That's to say the defendant has to be able to show that he likely could have obtained some different result had he been given this specific admonishment at this hearing. And quite simply, Your Honors, the record just simply doesn't support the assertion that defendant somehow could have avoided having his drug court status revoked if he'd been admonished at this hearing that the sentencing range for his underlying offense was 2 to 10 years. The state had filed the PTR based on multiple serious violations of his drug court participation, and the court found a factual basis for his admission at the admission hearing. And for those reasons, the record does not indicate that defendant would have been able to obtain a different result, and so the defendant has failed to demonstrate that this improper admonishment prejudiced him or denied him real justice, where he's been unable to show that he could have avoided having his drug court status revoked had he been given that admonishment. And briefly, Your Honors, on the second issue, the state asked this court to affirm the defendant's sentence because it is not excessive. The sentencing judge presumably considered all mitigating factors and evidence indicating rehabilitation at the sentencing hearing because defendant presented all that sentencing at the hearing. The trial judge had discretion to weigh his drug addiction and aggravation, and his sentence is not disproportionate to the seriousness of his offense. It was well within the statutory range, and he was convicted of possessing a controlled substance that the General Assembly has deemed extremely and uniquely harmful. And for those reasons, Your Honors, unless there are any further questions, the state asks that you affirm the trial court. I think you mentioned that the defendant had been admonished seven months for him. Is that correct? Yes, Your Honor. I think I remember recalling that there was no transcript of this proceeding. Is that correct? That's correct, Your Honor. The transcript of the plea hearing is not in the record. How do we know what was really admonished to the defendant then? Well, Your Honor, first, since it's appellant's burden to furnish the complete record, any inferences should be drawn in favor of the state. So presumably the inference would be that the court at that hearing correctly admonished the defendant under Rule 402, which would require this admonishment. And the record does indicate through a note. Would you like me to finish? Please go ahead. The record does indicate just through a verbal note during I believe the sentencing hearing that he was admonished of his extended term eligibility at the plea hearing, which would imply that he was advised of his sentencing range as well. Thank you. Thank you, Your Honor. Thank you. Counsel. Let me finish just a few points. The state mentioned bond conditions. Like in Beecher, People v. Beecher, which is a Supreme Court case, it stated that the defendants in that case were released on recognizance. So it said that they were released on a recognizance bond. But the court still found that the defendants were in custody. Here the court does say that bond conditions were modified. But the thing is Mr. Case never was able to post bond. He wasn't released on recognizance bond. He was not on bond. And the thing is his custody in Chestnut was not one of those like a bond condition. So as we stated before, he couldn't fight for it. If Chestnut or the probation department didn't want him in there, he couldn't fight that. He couldn't get a hearing. He couldn't fight it in any way. It was pretty much Chestnut or jail. So as soon as anything happened at the Chestnut facility, he would have had to return. So it's kind of like Beecher in that even there they said that he was released on a recognizance bond, but the court still found that he was in custody. Counsel, I asked you earlier about he's on mandatory supervised release now. That's correct, Your Honor. And we're arguing here on February the 19th. That's correct, Your Honor. Do I understand this will be moved in a couple of months? That's correct, Your Honor. And that doesn't excuse us from doing our job, right? But it is we've got two months. That's correct, Your Honor. On the credit issue. Okay. Thank you. But that's still any time that he might have to serve. If he does violate, there's real time that he would have to serve, go back into custody. So I think even if it may be moved in a couple of months, it's still his livelihood and his freedom. So I think these 28 days are very important to him. And as the State agrees for the second argument, unless there's any other arguments for the first. Right, the first one. For the third argument is what I meant. For the third argument, as the State mentions, Mr. Pace did commit some serious crimes, and that violated his drug court status. And I think that's why it's so important that he was told the maximum and the minimum for the underlying offense, because that's what he would have been charged for, or that's what he would have been sentenced for. So I think that actually shows how important him knowing his maximum, that he was extended term eligible and what that would entail, was important. And regarding the one month versus the two month and him falling in the middle, as Your Honor stated, his actual guilty plea hearing occurred in Effingham Court. So we're just assuming that he was correctly admonished in that sense. But even then, that seven month period, it can't be the same thing as a one month period where, you know, 30 days later, I'm told, or I'm not told, but I have that in mind. This is seven months. And in the seven months, a lot happened in Mr. Pace's case. So we would strongly disagree that being told twice was being told repeatedly that he was subject to the Class 3 felony sentencing range, that he was extended term eligible. The first time he was told when he was first in court, he wasn't even with an attorney when he was first told. It's when he went in, he was given his charges. He was told, you know, this is a Class 3. I think the count two was a misdemeanor count for drug paraphernalia. I might be wrong on that. But that's when he was told. The first time he was told was when he received his charges. And then if he was told on the second time at the guilty plea hearing, that would have been the only other time. So his case depended for a couple of years. So that seven-month period, I think, has to go towards him as a reasonable person, as a reasonable-weight person, did not remember what he should have been admonished, what the trial court should have admonished him of, that he was extended term eligible, that he, you know, was being charged and convicted for the underlying offense, where there were other matters that came up afterwards. And that's why his petition was being revoked. And as Mr. Pace argued in his reply brief, his revocation hearing was mainly about the new offenses or the new issues that came up. And for the final point, in our reply brief, we ask that you, under the first argument, grant him his 20 days of credit, and under the third argument, to allow him to go back and get a new PTR hearing. Are there any other questions? Thank you, Your Honors. Thank you. The court will take matter into consideration. Thank you all.